IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ROBERT BROOKS,**

**Petitioner,**

**vs.**                                                      **No.  13-0435-DRH**

**UNITED STATES OF AMERICA,**

**Respondent.**

MEMORANDUM and ORDER

**HERNDON, District Judge:**

### I. Introduction, Background and Procedural History

This matter is before the Court on Brooks' motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 1) and supplements (Docs. 12 & 14).  The government opposes the motion (Docs. 8 & 16).  Based on the following, the Court denies Brooks' petition.  Further, having closely examined the record, the Court concludes that an evidentiary hearing is not necessary in this matter.  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004) (district court did not abuse its discretion in denying petitioner an evidentiary hearing where petitioner did not provide additional facts or assertions that would warrant a hearing).

On April 29, 2011, Brooks pled guilty to unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1), pursuant to a plea agreement. *United States v. Brooks*, 10-30236-DRH; Docs. 21, 23, 24, & 25. The plea agreement noted that the parties disputed the issue of whether Brooks qualified as an Armed Career Criminal ("ACC"). The government argued that Brooks was an ACC, and thus, his advisory guideline range did not apply and he was subject to the 15 year mandatory minimum sentence, resulting in an advisory guideline range of 180 months. Brooks argued that he was not an ACC, and thus, his advisory guideline range was 46-57 months. In addition, as part of the plea agreement, Brooks agreed to waive all of his appeal and collateral review rights with certain exceptions. One of those exceptions was that Brooks reserved the right to appeal the legal issue of whether he was an ACC based on his prior criminal convictions.

On September 14, 2011, the Court found Brooks to be an ACC and sentenced Brooks to 180 months in prison and Judgment reflecting the same was entered on September 15, 2011. *Id.* at Docs. 41 & 44. During the proceedings, Brooks was represented by attorney Paul Sims. Thereafter, Brooks, through Mr. Sims, filed a notice of appeal. *Id.* at Doc. 46. On May 24, 2012, the Seventh Circuit Court of Appeals issued the Mandate affirming the sentence and conviction in Brooks' criminal case. *Id.* at Doc. 59.

Subsequently, Brooks filed this § 2255 petition on May 6, 2013 (Doc. 1). Brooks raises many general arguments regarding ineffective assistance of counsel

during his criminal case. Specifically, Brooks argues that his attorney failed to properly negotiate a plea and failed to properly advise him of all the facts and law relative to the plea and, thus, his plea was not knowingly and voluntary and that counsel was ineffective at sentencing. Further, Brooks again raises the issue that he is not an ACC. Thereafter, Brooks filed supplemental pleading (Doc. 12) and a related back amendment (Doc. 14). The government has responded (Docs. 8 & 16). As the motion is ripe, the Court turns to address the merits of the petition.

## II. Legal Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. More precisely, "[r]elief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). As a result, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

Of course, a § 2255 motion does not substitute for a direct appeal. A defendant cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States,* 523 U.S. 614,

622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fountain v. United States*, 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt*, 83 F.3d at 816. Meanwhile, a § 2255 motion cannot pursue non-constitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States*, 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the § 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro v. United States*, 538 U.S. 500, 504-05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Fountain*, 211 F.3d at 433-34. Further, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from that performance. *Massaro*, 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

### III. Analysis

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to assistance of counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 688-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Fountain v. United States,* 211 F.3d 429, 434 (7th Cir. 2000). Either *Strickland* prong may be analyzed first; if that prong is not met, it will prove fatal to plaintiff's claim. *Strickland,* 466 U.S. at 697; *Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993).

Regarding the first prong of the *Strickland* test, counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland,* 466 U.S. at 689. The petitioner's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted). In other words, the Court must not become a "Monday morning quarterback." *Harris v. Reed,* 894 F.2d

871, 877 (7th Cir. 1990). With regards to the second prong of *Strickland,* the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir. 2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams,* 453 F.3d at 435 (citing *Strickland,* 466 U.S. at 694).

In the instant case, the Court cannot say that Mr. Sims' performance significantly prejudiced Brooks or that Mr. Sims' representation fell below an objective standard of reasonableness. Further, the Court cannot say that despite these alleged errors the results of the proceedings would have been different.

First, Brooks argues that his attorney was ineffective for failing to protect his constitutional rights because it "well documented as the fact that Brooks is not a[sic] Armed Career Criminal." He also contends that Mr. Sims provided ineffective assistance by grossly misadvising him regarding the plea agreement proceedings. He claims that Mr. Sims informed him that there "was a 100% chance of not being charged as an Armed Career Criminal;" that the government's evidence showed that he only had a state conviction and that there was insufficient evidence to show that his Tennessee offense could be held under the residual clause as a violent felony for the purpose of the armed career criminal enhancement. Thus, Brooks, maintains that such mis-advice prejudiced him. The Court addresses these two grounds together as they are interrelated.

The Court finds that Brooks' petition fails as to these two issues. His claims that his counsel was ineffective are without merit. The Court finds that Brooks has not met the burden regarding the involuntariness of his plea. Moreover, the Court rejects Brooks' arguments that his counsel did not inform him of the facts and the elements of this case. First, Brooks does not offer support for his allegation that his attorney did not advise him properly. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (petitioner must present objective evidence that he would not have entered the guilty plea; his own self-serving testimony is not enough). Therefore, his claims of ineffective assistance of counsel on these grounds do not succeed. *See United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir.), *cert. denied*, 493 U.S. 831 (1989)(holding that even assuming petitioner's counsel should have advised petitioner of possible consequences of his plea, petitioner has the burden to offer evidence to support the bare allegations that his counsel failed to advise him of these possibilities). Furthermore, the Seventh Circuit held:

> In *Barnes*, the defendant's lawyer failed to inform him that if he pled guilty, he would be classified as a career offender, and thus, subject to a much greater punishment than the lawyer predicted. We held that even a "mistake that great" was insufficient to establish a constitutional violation.

*United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir. 1999). Also, Brooks' arguments are belied by his own statements at the change of plea hearing which are presumed truthful. *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998). Furthermore, it is clear that Brooks understood the terms of the plea

agreement negotiated by Mr. Sims and entered a voluntary plea of guilty. Magistrate Judge Williams thoroughly went through the plea agreement with him to ensure he understood it. Specifically, the following occurred during the change of plea hearing:

> THE COURT: Do you further understand that having been sworn, if you do not answer my questions truthfully, you will be subject to the penalties of perjury or making a false statement.
> MR. BROOKS: Yes, sir.
> …
> THE COURT: Mr. Brooks, have you had ample opportunity to discuss your case with your attorney, Mr. Sims, who is here with you now?
> MR. BROOKS: Yes, sir.
> THE COURT: Are you satisfied with your attorney's representation?
> MR. BROOKS: Yes, sir.
> THE COURT: Mr. Brooks, I want to remind you that your case is set for a jury trial on May 9th 2011 at 9:00 a.m., before Chief United States District Judge David R. Herndon. Under the Constitution and laws of the United States, you have an absolute right to that trial by jury. No one, including myself, another judge of this court, your own attorney, the government attorney, or any agents of the government can deny you your constitutional right to a jury trial on the charges contained in this indictment.
> And this case will proceed to a jury trial before the district judge, as scheduled unless, you enter a guilty plea here today. Do you understand that?
> MR. BROOKS: Yes, sir I do.
> …
> The COURT: Mr. Brooks, I want to explain to you what the possible punishments that are involved with pleading guilty to this offense.
> And in your case, it looks to me there's some dispute about that, so I am going to make sure that we're very clear as to what these possible penalties are.
> First of all, under normal circumstances, -- okay. Under normal circumstances, not necessarily applying to you, the offense of felon in possession of a firearm carries a maximum

penalty of not more than 10 years of imprisonment, a find up to $250,000, or both such fine and term of imprisonment, not more than three years of supervised release, and 100-dollar mandatory special assessment.

However, it is the government's position that you are an armed career criminal. Do you understand that?

MR. BROOKS: Yes, sir.

THE COURT: Should you be determined to be an armed career criminal by the sentencing court, in this case Judge Herndon, as an armed career criminal, you would have a mandatory minimum term of imprisonment of 15 years up to a term of life imprisonment, a fine of not more than $25,000, or both such fine and term of imprisonment. In addition to that, you would have, again, up to a three-year term supervised release and a 100-dollar mandatory special assessment.

Do you understand those possible penalties should you be found to be an armed career criminal, Mr. Brooks?

MR. BROOKS: Yes, sir, I do.

MS. SCOTT: Your Honor, I'm sorry to interrupt, but that's a typo. I'm sorry. It's actually a 250,000-dollar fine not a 25,000-dollar fine.

THE COURT: Okay.

MS. SCOTT: And I believe your Honor said that the supervised release was not more than three years. It's actually not more than five years because it is a Class A felony.

…

THE COURT: Mr. Brooks, do believe that you understand the various possible penalties that could be at issue in your case, depending on whether or not you are found to be an armed career criminal?

MR. BROOKS: Yes, sir, I do.

THE COURT: Mr. Brooks, has anyone threatened you or forced you in any way to plead guilty in this case?

MR. BROOKS: No, sir.

THE COURT: Has anyone, including your attorney, made any prophesy or promise as to what your sentence will or will not be?

MR. BROOKS: No, sir.

…

THE COURT: Do you understand the presentence report will be completed to assist the Court in sentencing you, and you and the government will have an opportunity to challenge the facts reported by the probation officer?

MR. Brooks: Yes, sir.

THE COURT: Mr. Brooks, I have been handed a document entitled "Plea Agreement" in this case. It is 16 pages, and I am going to show it to you

…

So I am going to hand you this document entitled "Plea Agreement." And I am going to ask you to confirm a few things.

…

THE COURT: Is that your signature on Page 16?

MR. BROOKS: Yes, sir, it is.

THE COURT: Did you read this entire document entitled "Plea Agreement?"

MR. BROOKS: Yes, sir, I read it.

THE COURT: Did you read it before you signed it?

MR. BROOKS: Yes, sir.

THE COURT: Did you discuss it with your attorney, Mr. Sims, before you signed it?

MR. BROOKS: Yes, sir, I did.

….

THE COURT: Now with respect to the remainder of the plea agreement, do you feel like you understand the entire plea agreement, Mr. Brooks?

MR. BROOKS: Yes, sir.

…

THE COURT: Now, that's your submission and the government's submission. The sentencing Court, Judge Herndon, is going to have to make his own determination as to whether or not you are, in fact, an armed career criminal, and also make a determination of what your guidelines range therefore is.

Do you understand that?

MR. BROOKS: Yes, sir. But I have a question. We do have a right to argue.

THE COURT: Yes. You are absolutely retaining that right.

MR. BROOKS: All right

THE COURT: You have got a right to argue to Judge Herndon, first of all, that you are not an armed career criminal.

MR. BROOKS: Yes, sir.

THE COURT: And you have also in this plea agreement retained your right to appeal the judge's decision if he decides you are an armed career criminal. So you have retained those rights.

MR. BROOKS: Thank you.

THE COURT: Yeah. Well, I understand that's an eminent concern to you. Bottom line is this, though, even you have a right to challenge those things, should Judge Herndon decide you are an armed career criminal, you are not allowed to withdraw your plea.
MR. BROOKS: Right. I understand that.
…
THE COURT: All right. There are other terms and conditions in that plea agreement. But do you believe you understand all the terms and conditions in this plea agreement, Mr. Brooks?
MR. BROOKS: Yes, sir, I do.
THE COURT: Does this plea agreement constitute your entire understanding with the government?
MR. BROOKS: Yes, sir.
THE COURT: Do you understand that the Court is not bound by this agreement, which is a contract between, and only between you and the government?
MR. BROOKS: Yes, sir, I do.
THE COURT: Has anyone made any promise, other than what's in the plea agreement, to induce you to plead guilty?
MR. BROOKS: No, sir.
THE COURT: Do you understand that any recommendation of sentence agreed to by your counsel and government or any agreement not to oppose your attorney's requested sentence is not binding on the district judge, and on the basis of your guilty plea, he might sentence you up to the maximum permitted by law?
MR. BROOKS: Yes, sir.
THE COURT: Do you further understand that if the district judge declines to impose the sentence recommended by the government and your counsel and imposes a more severe sentence, you will not be entitled to withdraw your plea?
MR. BROOKS: Yes, sir.
…
THE COURT: Mr. Brooks, I only have a few more questions for you. Are you prepared to go forward and finalize your guilty plea?
MR. BROOKS: Yes, sir, I am.
THE COURT: Mr. Brooks, are you pleading guilty because you are guilty?
MR. BROOKS: Yes, sir, I am.
THE COURT: Are you doing this of you own free will?
MR. BROOKS: Yes, sir, I am.

(Doc. 72)

Clearly, Magistrate Judge Williams informed Brooks that the Court would not be able to determine the guideline impact for the sentence in his case until after the Presentence Report was prepared and the Court reviewed the objections of the parties and that the sentence results from that may be different from the one provided by counsel and the plea agreement. As stated before, Brooks was aware of the consequences and benefits of entering into the plea agreement with the government and decided to plead guilty. Furthermore, "[d]istrict courts do not and need not treat lightly responses given under oath at a hearing conducted pursuant to Rule 11 … We have therefore made clear that a record of a Rule 11 proceeding is entitled to the presumption of verity and that answers contained therein are binding." *United States v. Winston*, 34 F.3d 574, 578 (7th Cir. 1994). Brooks' claim that his attorney was ineffective is directly contradicted by his own words, under oath at the change of plea hearing. The Court finds that Mr. Sims' conduct in negotiating the plea did not fall below an objective standard of reasonableness. Brooks has not shown any "specific acts or omissions" to support his claims of ineffectiveness with respect to the plea process or the terms of his plea agreement.

Further, the Court rejects Brooks' arguments that counsel was ineffective for failing to investigate the Tennessee case statute as his state case does not qualify as a violent felony. In this case, the Court properly examined the Presentence Report, heard objections and made findings regarding the Presentence Report and correctly applied the applicable law and the guidelines in

this case.  In fact, the Court sentenced Brooks to the mandatory minimum in this case based on the finding that he was an Armed Career Criminal.  In this case, the Court cannot say that Brooks' counsel's performance significantly prejudiced him or that his counsel's representation fell below an objective standard of reasonableness.  Contrary to Brooks' assertions now, his counsel did file objections to the Presentence Report, argued on paper, and argued during the sentencing hearing and on appeal that Brooks should not be considered an armed career criminal.  The record is clear that Mr. Sims had a thorough understanding of the facts and legal issues involving Brooks' case – knowledge that Mr. Sims used to argue that a violation of the statute was not a violent felony in relation to the Armed Career Criminal Act ("ACCA").  Specifically, the following colloquy took place during the sentencing:

> THE COURT:  So, if the charging instrument charged him with something – although here its marijuana, which is a controlled substance; there it's cocaine – he's convicted of exact same injury, *Fife* says that's a violent felony under ACCA.  What makes your client's case different?
> MR. SIMS: You Honor, you said that – and key word was "armed." When the person is armed, he has the gun in his – on his person.  This [sic] guns were found behind the seat.  They were not readily accessible to the defendant.  He was not armed.
> …
> THE COURT:  He was convicted in Tennessee of possessing the weapon.
> MR. SIMS: Correct, but there is – you can violate the Tennessee law without actual possession, without -- you can have, as in this case – they had constructive possession.  And what I ask the Court to take into consideration, the firearm was not readily accessible.
> THE COURT: How could you be convicted of possession of it if it's not readily accessible?

> MR. SIMS: Constructive possession is. If constructive possession says that if I have – the firearm can be locked in the trunk of the car, and that's still constructive possession, but it's not readily accessible. There is – the officer was not threatened or there was no immediate – there was not – there was – the conduct did not create a substantial risk of death or physical injury. The guns were – and when you say behind the seat, Your Honor, it's not like you can – in a car, that you can reach behind. You would have to take the car apart. You'd have to take the seat out in order to get those guns. So that's what I am arguing, it's – it fails under *Begay* because *Begay* states that there should be a serious potential of physical injury to another. And I'd day that under the Tennessee statute, there – and if you look at the charging document, you still have the fact that he can constructively possess the weapon and not possess – not present a threat of physical injury.

(Doc. 51). Further, Mr. Sims raised this same argument on appeal: "Brooks also argues that the district court should not have counted as an ACCA predicate his 2005 conviction under a Tennessee statute making it a felony to possess a 'deadly weapon with the intent to employ it during the commission of, attempt to commit, or escape from any offense not define as a dangerous offense.' TENN.CODE ANN. § 39-17-1307(d)(2)(2005)." (Doc. 59-2). The Seventh Circuit affirmed his conviction finding:

> Here, we similarly conclude that the Tennessee statute is divisible and, thus, the modified categorical approach applies. The language of the statute is analogous to the Illinois armed violence statute that we characterized as divisible. In *Fife*, as they both reference possession of weapon and undefined underlying offenses. *Compare* TENN.CODE ANN. § 39-17-1307, *with* 720 ILCS 5/33A-2. Applying the modified categorical approach, we examine Brooks' conviction in the context of his underlying offense – the felonious possession of marijuana with the intent to sell or deliver – and conclude that the conviction constitutes a violent felony. First, his crime presented a serious risk of physical injury. As we stated in *Fife*, "[t]here is no doubt, nor is it seriously contested, that the possession of cocaine with intent to deliver while armed with a weapon presents a serious potential risk of physical injury similar in

>degree to the enumerated crimes" of the ACCA. *Fife*, 624 F.3d at 447. Turning to the second prong of the residual clause analysis, we conclude that this offense involves the same or similar kind of purposeful, violent, and aggressive conduct as the enumerated crimes. The Tennessee statute requires purposeful conduct, specifically, that Brooks possessed a "deadly weapon with the intent to employ it" TENN.CODE ANN. § 39-17-1307(d)(2); *Fife*, 624 F.3d at 448; *Woods*, 576 F.3d at 408; *State v. Armstrong*, No. M2008-02837-CCA-R3-CD, 2010 WL 987207 at *7 (Tenn. Crim. App. March 18, 2010); *State v. Bernard*, No. E2005-00852-CCA-R3_CD, 2006 WL 1063687, at *5 (Tenn. Crim. App. Apr. 21, 2006). And the "unmistakable connection between the illegal drug trade and violence." *Fife*, 624 F.3d at 449, means that Brooks' possession of a weapon in the commission of the underlying drug offense constituted violent and aggressive conduct. *See James v. United States*, 550 U.S. 192, 209 (2007).

(Doc. 59-2). Thus, his counsel cannot be faulted for failing to raise issues (such as failing to investigate the Tennessee state statute) which he did, in fact, raise. Sims was not ineffective because the undersigned and the Court of Appeals rejected his arguments regarding the Tennessee statute and ACCA.

Next, the Court rejects most of Brooks' additional arguments that he presented in his pleadings at documents 12 and 14. A review of these pleadings demonstrates that Brooks is rehashing the same arguments that Mr. Sims made before the undersigned and the Seventh Circuit. Obviously, based on the above, the Court finds that Mr. Sims' was not ineffective in representing Brooks.

Lastly, the Court addresses Brooks' argument that *Descamps v. United States*, 13 S.Ct 2276 (2013) renders the prior findings that the two contested prior felony convictions were predicate offenses for the purposes of the ACCA

wrong. The Court rejects this argument as Brooks' reliance on *Descamps* is misplaced.

The Supreme Court in *Descamps* held that the modified categorical approach could not be used when determining whether an offense falls within the enumerated-offense clause if the underlying statute was not divisible. *Descamps*, 13 S.Ct at 2281-2286. Brooks raised this argument in the underlying criminal case, on appeal and again in this proceeding – that the conviction should not be considered a violent felony because the state court judge found during sentencing that Brooks did not cause or threaten physical harm during the burglary. The Seventh Circuit addressed this issue on appeal and held precisely what *Descamps* held. Specifically, the Seventh Circuit held:

> Brooks misunderstands the modified categorical approach. Courts do not analyze judicial findings on the defendant's actual conduct, but look to the charging document and other portions of the judicial record only to determine whether the elements of the offense constitute a violent felony.

(Doc. 59-2). The Seventh Circuit used the modified categorical approach to determine whether Brooks' burglary conviction fit within the enumerated-offenses clause because the Illinois' 1979 burglary statute was divisible. Thus, the Court rejects this argument.

Further, the Court finds that *Descamps* does not help Brooks as to the finding regarding Brooks' Tennessee State conviction for unlawful possession of a weapon while in commission of a felony. As stated above, the undersigned and the Seventh Circuit analyzed this offense under the residual clause of the ACCA

and the undersigned and the Seventh Circuit, because the statute was divisible, found that it was a violent felony within the ACCA using the modified categorical approach. Brooks is grasping at straws.

The Court finds that Brooks' claims that his counsel was ineffective are without merit. His bald assertions (which are either not true or not supported by the record) that his counsel was ineffective are insufficient basis to grant him the relief he seeks. "An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct." *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001); *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005)(finding that a claim of ineffective assistance unsupported by "actual proof of [his] allegations" cannot meet the threshold requirement for purposes of § 2255). The Court concludes that Brooks' attorney was not ineffective in representing Brooks in this criminal matter. In fact, the Court finds that his actions were reasonable and sound in light of the circumstances.

Brooks' sentence and conviction are legal. He has not shown that his sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," 28 U.S.C. § 2255. Thus, the Court rejects Brooks' 28 U.S.C. § 2255 petition/motion. Finally, the Court notes that letting Brooks' conviction and sentence stand would not result in a fundamental miscarriage of

justice. *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Where a district denies a *habeas* petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

As to petitioner's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing the merits of petitioner's claim. Reasonable jurists could not debate that the petition should have been resolved in a different manner, as petitioner's claims of ineffective assistance of counsel do not present evidence of constitutionally deficient attorney performance; nor do they demonstrate resulting prejudice. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## IV. Conclusion

Accordingly, the Court **DENIES** Brooks' motion under 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence by person in federal custody and the supplements to the petition. The Court **DISMISSES with prejudice** this cause of action. The Court **ORDERS** the Clerk of the Court to enter judgment reflecting the same. Further, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 6th day of October, 2014.

David R. Herndon
2014.10.06
13:17:38 -05'00'

**United States District Judge**